IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LESTER C. MCKENZIE III, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | Magistrate Judge |
| TENNESSEE TECHNOLOGICAL ) | |
| UNIVERSITY, LESLIE ) | Jury Demand |
| CRICKENBERGER, in her official ) | |
| capacity, and BRANDON JOHNSON, ) | |
| in his official capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

For his Complaint against Defendants Tennessee Technological University ("TTU"), Dr. Leslie Crickenberger, in her official capacity ("Dr. Crickenberger"), and Dr. Brandon Johnson, in his official capacity ("Dr. Johnson") (collectively referred to as "Defendants"), Plaintiff Lester C. McKenzie III ("Mr. McKenzie") states:

## PARTIES

1. Mr. McKenzie is a citizen and resident of Cookeville, Tennessee, and a former employee of TTU.

2. TTU is a state-operated educational institution with its principal place of business in Cookeville, Tennessee. TTU receives federal funding. TTU employs more than 500 individuals.

3. Dr. Crickenberger is TTU's Associate Vice President of Human Resources and was Interim Vice President of Enrollment Management and Career Placement ("EMCP") and Mr. McKenzie's former supervisor.

4. Dr. Johnson is TTU's Vice President of Enrollment Management and Career Placement and Mr. McKenzie's former supervisor.

**JURISDICTION AND VENUE**

5. Mr. McKenzie brings this action for declaratory relief, prospective injunctive relief, equitable relief and damages for unlawful retaliation in employment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"); 41 U.S.C. § 4712; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"); the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"); Tenn. Code Ann. § 8-50-116; and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA"). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

6. Mr. McKenzie has met conditions precedent to the filing of this complaint. He timely filed a whistleblower reprisal complaint with the U.S. Department of Education, Office of Inspector General, on July 26, 2018. More than 210 days has passed since the filing of that complaint and the Inspector General has not issued a final order; thus, Mr. McKenzie files this complaint in this Court as of right pursuant to 41 U.S.C. § 4712(c)(2).

7. Mr. McKenzie reserves the right to amend this complaint to assert his retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). He timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") as to those claims on February 4, 2019. Once he obtains a Notice of Suit Rights from the EEOC he will timely amend this complaint to include his claims under Title VII.

# FACTS

8. Mr. McKenzie worked for TTU as Director of Financial Aid from or about August 1, 2005, until it notified him on May 31, 2018, that it was discharging him effective June 30, 2018.

9. Mr. McKenzie was qualified for his job with TTU and received satisfactory performance evaluations, multiple pay increases, and various awards and praise for his work during his employment. He did not receive any disciplinary action in accordance with Defendants' policies, procedures, customs and practices before being discharged.

10. TTU receives federal funding and financial assistance.

11. TTU and its students are grantees under Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1001, 1070, *et seq.* ("Title IV") and receive the following types of federal financial aid, among others: Pell Grant, Supplemental Educational Opportunity Grant (SEOG), Federal Work Study (FWS), Stafford (subsidized and unsubsidized), Perkins, Teacher Education Assistance for College and Higher Education (TEACH), PLUS, and Grad PLUS.

12. Title IV and applicable regulations require students to be enrolled in eligible programs of study in order to receive Title IV financial aid, including the types of aid listed in the preceding paragraph.

13. In late 2017 and in early and mid-2018, Mr. McKenzie discovered, disclosed and reported what he reasonably believed to be violations of Title IV and applicable regulations; gross mismanagement of federal funds; violations of laws, rules, and regulations related to federal funds, contracts, and grants; willful efforts by Defendants to violate federal law, rules or regulations having a material and adverse effect upon program operations or integrity; acts that constituted fraud against the federal government; the willful misappropriation of federal

resources; and/or acts constituting gross mismanagement of a program, gross waste of federal funds, or gross abuse of authority to his supervisors and other TTU officials.

14. Specifically, Mr. McKenzie disclosed and repeatedly reported that the TTU Admissions Department was changing the enrollment codes of students in "non-degree" and ineligible programs (for federal Title IV aid purposes) to degree-seeking and eligible status so that those students would receive Title IV aid. He disclosed and reported that TTU had also marked all programs coded in its system as "eligible" for financial aid when they should not have been marked as eligible. He disclosed and reported that pre-professional and nursing programs were not eligible for Title IV financial aid. He disclosed and reported that, as a result of these violations, ineligible students had received and were continuing to receive substantial amounts of Title IV aid that they should not have received. Indeed, approximately $1,700,000 in federal aid funds were awarded to students who were ineligible for such funds during the 2017-2018 award year alone. Mr. McKenzie repeatedly advised and encouraged his supervisors and TTU officials to self-report these violations of Title IV and applicable regulations to the appropriate entities.

15. The TTU supervisors and officials to whom Mr. McKenzie disclosed and reported that the Title IV-related violations had occurred and were continuing to occur included Judy Riggsbee, Director of Admissions, in November 2017; Dr. Crickenberger from late 2017 through May 2018; Dr. Mark Stephens, Interim Provost, in January 2018; to those present in a Curriculum Meeting in February 2018; to the President's Cabinet, including Dr. Philip Oldham, President, Dr. Claire Stinson, Vice President of Business/Finance, and other senior administrators in March 2018; and to Dr. Johnson in April and May 2018.

16. Mr. McKenzie initially contacted an Admissions clerk, Michael Sliger, who was identified in the TTU system as having made changes in students' status, and asked him why he

4

had changed certain students' status from non-degree to degree-seeking status. Mr. Sliger would only state that he "was told to do it." He would not state who had told him to make the changes.

17. Mr. McKenzie believed that the Director of Admissions, Ms. Riggsbee, had instructed Mr. Sliger to make the changes to students' status and inquired with her about the issue. She first advised him that she "did not know why" the changes had been made. A few days later, however, she advised him that the changes had been made because they were necessary for students to receive financial aid.

18. Mr. McKenzie advised Ms. Riggsbee that the changes in students' status at issue violated federal financial aid laws and regulations providing that students must be enrolled in an eligible program to receive Title IV aid.

19. Mr. McKenzie then contacted a regional trainer for advice on how to handle the violations. The trainer advised that TTU should self-report the violations to the Office of Inspector General ("OIG") with the U.S. Department of Education.

20. Mr. McKenzie then sent an email to his supervisor, Dr. Crickenberger, explaining the violations that had been discovered.

21. Dr. Crickenberger asked Mr. McKenzie what options TTU had with respect to the reported violations. Mr. McKenzie advised her that TTU should self-report the violations. Dr. Crickenberger stated that she would discuss the matter with senior administration and get back to him. She subsequently advised him that it was "no longer his issue" and was "in the hands of" TTU President, Dr. Oldham, and the Interim Provost, Dr. Stephens.

22. Mr. McKenzie also disclosed and reported that pre-professional and nursing programs were not eligible for Title IV financial aid and that TTU should self-report the violations at issue in a February 2018 Curriculum Meeting in which the Provost, Deans and

5

Case 2:19-cv-00044 Document 1 Filed 05/30/19 Page 5 of 14 PageID #: 5

Chairs of colleges and academic departments, and student representatives were present, and in a March 2018 President's Cabinet Meeting in which the President, Provost, Vice Presidents of the University, and Enrollment Management and Career Placement ("EMCP") Division Directors were present.

23. Throughout late 2017 and early and mid-2018, Mr. McKenzie repeatedly advised Dr. Crickenberger that TTU needed to self-report the Title IV-related violations that had been discovered. On each occasion, she advised him to "drop" the subject and stated that it was "out of his hands." She made it clear that he was not to do anything about the violations or there would be adverse consequences for him.

24. After Mr. McKenzie disclosed and reported the above-described violations and issues to his supervisors and TTU officials, they continued to engage in and/or allow the violations to occur and did nothing to remedy or stop them from continuing to occur. They refused to discuss the matter and failed and refused to self-report the violations as he urged them to do. Furthermore, Dr. Crickenberger attempted to silence Mr. McKenzie and prevent him from continuing to report and express his concerns.

25. Additionally, on December 13, 2017, Mr. McKenzie participated in a meeting with Dr. Crickenberger in which she announced that Allen Mullis, an Orientation Director who had been in EMCP for less than four months, was being promoted to Executive Director of Student Retention, Orientation, and Student Success.

26. Mr. McKenzie and other directors believed that Dr. Julie Longmire, who was then the Director of Advisement Services and was overseeing Student Retention and Student Success, was by far the most qualified candidate for promotion to the Executive Director position that Dr. Crickenberger gave to Mr. Mullis instead of her.

6

27. Dr. Crickenberger explained that while Dr. Longmire was extremely well qualified, she was "a single mother" and "would not be here long term." She stated that she had discussed her decision with Dr. Longmire before the meeting.

28. On December 14, 2017, Mr. McKenzie met with Dr. Longmire in her office. She was very upset, began crying and informed him that, before the December 13, 2017, meeting, she did not know that she was not going to receive the promotion that the less qualified, less experienced Mr. Mullis received. Dr. Longmire later confirmed this fact again in a telephone conversation.

29. On or about January 2, 2018, Mr. McKenzie filed an anonymous sex/gender discrimination complaint with TTU's Title IX office based on the discriminatory statements Dr. Crickenberger made in the December 13, 2017, meeting and the discriminatory failure to promote Dr. Longmire to the Executive Director position. He believed that he was required to do so based on Title IX training that he had received.

30. On January 24, 2018, TTU's Title IX Coordinator, Zeva Edmondson, emailed Mr. McKenzie about the meeting he had participated in on December 13, 2017. They spoke on the phone and scheduled a meeting for the next day.

31. On January 25, 2018, Mr. McKenzie met with Ms. Edmondson and the Assistant Director of Service Learning, Michelle Huddleston, about the December 13, 2017, meeting and the sex/gender discrimination complaint he had made on behalf of Dr. Longmire and advised them that he was the person who had filed it.

32. On January 30, 2018, Ms. Edmondson advised Mr. McKenzie that she would discuss his reported concerns with Compliance Officer Greg Holt the following week. On

7

February 13, 2018, she provided him a copy of a report denying that his discrimination complaint had merit.

33. Dr. Crickenberger was informed and/or knew that Mr. McKenzie had filed the sex/gender discrimination complaint on behalf of Dr. Longmire against her. She retaliated against him for doing so. She took away and refused to provide various job responsibilities that were his or that he had been promised. She ostracized and became very distant toward him. She cancelled or excluded him from meetings that they had scheduled. During meetings that they did have, she chastised him for making the discrimination complaint. She stated in a meeting that she "want[ed] to thank the person who filed the complaint against [her]" and that "it reminded [her] that [she] needed to be more guarded about what [she] said in meetings." Then she and Director of Admissions Riggsbee, who is a close personal friend of hers, immediately stared at Mr. McKenzie in an intimidating manner. The combination of this retaliatory conduct would deter a reasonable employee in Mr. McKenzie's position from making or supporting a charge of discrimination.

34. Mr. McKenzie subsequently advised Ms. Riggsbee that Dr. Crickenberger was retaliating against him. Ms. Riggsbee responded that she "d[id] not blame [Dr. Crickenberger] since [he] filed the complaint against her."

35. Mr. McKenzie also met with University Registrar, Brandi Hill, who advised him that Dr. Crickenberger was "out to get [him] for filing the complaint" and that Dr. Crickenberger had told her that he was the person who had filed the complaint against her.

36. Defendants are covered employers under the FMLA.

37. Mr. McKenzie was eligible for and entitled to FMLA leave in April 2018.

8

38. Mr. McKenzie requested FMLA leave for a serious health condition in or about early April 2018.

39. TTU approved and/or granted Mr. McKenzie's request for FMLA leave.

40. On or about April 2, 2018, a new Vice President of EMCP, Dr. Johnson, began working for TTU and supervising Mr. McKenzie.

41. On or about April 6, 2018, Mr. McKenzie met with Dr. Johnson in Dr. Johnson's office with his (Mr. McKenzie's) Associate Director, Debbie Maynard. He wanted to let Dr. Johnson know that he would be taking approved medical leave from April 9, 2018, to April 30, 2018, and that TTU still needed to self-report the Title IV-related violations that he had previously disclosed and reported to his supervisors and other university officials.

42. Dr. Johnson became hostile and accusatory toward Mr. McKenzie in the April 6, 2018, meeting and stated that "no one is guaranteed their job" at TTU and that he and Dr. Crickenberger had "talked a lot about [him]" and that what he had "heard from her" was not good. He further stated that Mr. McKenzie should let him, Dr. Crickenberger, and new Provost Dr. Lori Bruce handle the Title IV-related violations that he had disclosed and reported.

43. After Mr. McKenzie returned from medical leave on April 30, 2018, he met with Dr. Johnson in May 2018 and again raised his concerns about the Title IV-related violations.

44. Dr. Johnson became very irritated with Mr. McKenzie for raising his concerns. He asked him if TTU could just state that the ineligible students were in "General Education," which was an eligible designation, with a concentration in Pre-Med or Pre-Law.

45. Mr. McKenzie advised Dr. Johnson that the programs were not set up in the suggested manner and that changing the designation of students' status after-the-fact would not

9

eliminate the violations that had occurred, was not the right thing to do, and that the violations still needed to be reported. Dr. Johnson then ended the meeting.

46. On or about May 29 or 30, 2018, Dr. Johnson sent Mr. McKenzie a meeting request by email to discuss his annual performance evaluation on May 31, 2018.

47. Mr. McKenzie went to the meeting on May 31, 2018, and discovered that Dr. Crickenberger was present in addition to Dr. Johnson.

48. While the meeting was supposed to be about Mr. McKenzie's performance evaluation, the evaluation was not discussed. Instead, Dr. Johnson stated that he "had hoped that [Mr. McKenzie] would be able lead the Financial Aid Office to the next level," but that they had decided that he "could not do so" and were terminating his employment.

49. Dr. Johnson gave Mr. McKenzie no other reason for his discharge.

50. Dr. Crickenberger had a folder in her hand and, at the end of the May 31, 2018, meeting, advised Mr. McKenzie that it contained his termination letter and a small severance offer that he had 21 days to accept in exchange for a waiver and release of all of his claims. She threw the folder onto the desk between her and Dr. Johnson and Mr. McKenzie. Mr. McKenzie retrieved the folder and left the office. He then filed a retaliation complaint with TTU's Title IX Office.

51. Defendants' alleged reason for discharging Mr. McKenzie was a pretext for retaliation. The Financial Aid Office he oversaw had performed very well and, among things, had recently been recognized for (a) having the lowest Draft Cohort Default Rate and (b) graduating students with the least amount of debt, both among all four-year public universities in the state of Tennessee.

52. Defendants discharged Mr. McKenzie because he (a) opposed and reported sex/gender discrimination, filed a sex/gender discrimination complaint on behalf of Dr. Longmire and participated in TTU's Title IX Office's investigation of that complaint, in violation of Title IX, Title VII, and the THRA; (b) disclosed, reported, and refused to remain silent about what he reasonably believed to be violations of Title IV and applicable regulations, gross mismanagement of federal funds, and violations of laws, rules, and regulations related to federal funds, contracts, and grants to his supervisors and TTU officials and urged them to self-report the violations to the appropriate entities, and disclosed, reported, and refused to remain silent about willful efforts by Defendants to violate federal law, rules or regulations having a material and adverse effect upon program operations or integrity; acts that constituted fraud against the federal government; the willful misappropriation of federal resources; and/or acts constituting gross mismanagement of a program, gross waste of federal funds, or gross abuse of authority, in violation of 41 U.S.C. 4712, Tenn. Code Ann. § 8-50-116, and the TPPA; and (c) exercised FMLA leave from April 9-30, 2018, in violation of the FMLA.

53. Drs. Crickenberger and Johnson are liable in their official capacities for prospective injunctive relief, including but not limited to reinstatement, attorneys' fees and costs pursuant to *Ex parte Young*, 209 U.S. 123 (1908), and its progeny, and for the willful and malicious retaliatory conduct described in this complaint.

54. Defendants' conduct as described in this complaint was willful, intentional, malicious, fraudulent, and/or recklessly indifferent to Mr. McKenzie's protected rights, entitling him to punitive, liquidated, and/or treble damages under the applicable statutes.

55. As a result of Defendants' conduct, Mr. McKenzie has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress

11

and anxiety, inconvenience, damage to his reputation, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

## CLAIMS

56. Mr. McKenzie incorporates all of the paragraphs above as if fully stated in each count below.

### Count I Against Defendant TTU
### Violation of Title IX, Title VII, and the THRA

57. Defendants retaliated against Mr. McKenzie for opposing and reporting sex/gender discrimination, filing a sex/gender discrimination complaint on behalf of Dr. Longmire and participating in TTU's Title IX Office's investigation of that complaint, in violation of Title IX, Title VII, and the THRA.

58. As a result of Defendants' violations of Title IX, Title VII, and the THRA, Mr. McKenzie suffered damages.

### Count II Against Defendant TTU
### Violation of 41 U.S.C. § 4712 and the TPPA

59. Defendants retaliated against Mr. McKenzie for disclosing, reporting, and refusing to remain silent about what he reasonably believed to be violations of Title IV and applicable regulations, gross mismanagement of federal funds, and violations of laws, rules, and regulations related to federal funds, contracts, and grants to his supervisors and TTU officials and urging them to self-report the violations to the appropriate entities, in violation of 41 U.S.C. § 4712 and the TPPA.

60. As a result of Defendants' violations of 41 U.S.C. § 4712 and the TPPA, Mr. McKenzie suffered damages.

### Count III Against All Defendants
### Violation of Tenn. Code Ann. § 8-50-116

61. Defendants retaliated against Mr. McKenzie for disclosing, reporting, and refusing to remain silent about what he reasonably believed to be violations of Title IV and applicable regulations; willful efforts by Defendants to violate federal law, rules or regulations having a material and adverse effect upon program operations or integrity; acts that constituted fraud against the federal government; the willful misappropriation of federal resources; and/or acts constituting gross mismanagement of a program, gross waste of federal funds, or gross abuse of authority, in violation of Tenn. Code Ann. § 8-50-116.

62. As a result of Defendants' violations of Tenn. Code Ann. § 8-50-116, Mr. McKenzie suffered damages.

### Count IV Against Defendants Crickenberger and Johnson
### Violation of the FMLA

63. Defendants Crickenberger and Johnson retaliated against Mr. McKenzie for exercising FMLA leave, and they are liable in their official capacities for prospective injunctive relief, including but not limited to reinstatement and attorneys' fees and costs or, alternatively, equitable relief and attorneys' fees and costs pursuant to *Ex parte Young*, 209 U.S. 123 (1908), and its progeny, and for the willful and malicious retaliatory conduct described in this complaint.

### RELIEF REQUESTED

WHEREFORE, Mr. McKenzie respectfully requests:

1. That the Court declare that Defendants violated Title IX, Title VII, the THRA, 41 U.S.C. § 4712, Tenn. Code Ann. § 8-50-116, the TPPA, and the FMLA, permanently enjoin them from violating his rights or grant him other equivalent equitable relief, and order them to

reinstate him to an equivalent job position at TTU with the same or greater pay and benefits and appropriate expunging of his personnel file;

2. A jury trial and entry of judgment in his favor;

3. Back pay and damages for lost benefits;

4. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, damage to reputation, and loss of enjoyment of life;

5. Reinstatement with restoration of all benefits and seniority or, alternatively, front pay and damages for lost benefits;

6. Punitive and/or liquidated damages;

7. Treble damages under Tenn. Code Ann. § 8-50-116;

8. Attorneys' fees, costs and litigation expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further injunctive, declaratory, equitable and legal relief to which he may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
Law Office of Douglas B. Janney III
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 742-5900
doug@janneylaw.com

*Counsel for Plaintiff, Lester C. McKenzie III*