# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **LESTER C. McKENZIE, III,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00044 |
| ) | |
| **TENNESSEE TECHNOLOGICAL** ) | |
| **UNIVERSITY, et al.,** ) | |
| ) | |
| Defendants. ) | |

## BRIEF IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

Tennessee Technological University, Leslie Crickenberger, in her official capacity, and Brandon Johnson, in his official capacity, by and through State of Tennessee, Office of Attorney General and Reporter, respectfully move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Mr. McKenzie's Complaint.

### FACTS AS ALLEGED AND PROCEDURAL HISTORY[1]

Tennessee Technological University ("TTU") is a state-operated educational institution located in Cookeville, Tennessee. (Complaint (Doc. 1) at ¶ 2.) From August 1, 2005, until his termination on May 31, 2018, Lester C. McKenzie III worked for TTU as Director of Financial Aid. (*Id.* at ¶ 8.) Mr. McKenzie reported to Dr. Leslie Crickenberger on an interim basis until April 2, 2018, and from that date till his termination, Dr. Brandon Johnson served as Mr. McKenzie's supervisor. (*Id.* at ¶¶ 3, 4, 40.).

---

[1] Defendants do not concede or waive their ability to later challenge the truth of any fact asserted in the Complaint, but, for purposes of this Motion only, present the facts as stated by the pleading.

Mr. McKenzie did the following while employed by TTU:

1. On January 2, 2018, he filed a sex/gender discrimination complaint against Dr. Crickenberger with TTU's Title IX Office and subsequently participated in TTU's investigation into the complaint (*id.* at ¶¶ 29, 33, 52, 57);

2. In late 2017 and early and mid-2018, he reported within TTU alleged mismanagement of Title IV federal financial aid funds and alleged violations of laws, rules, and regulations related to federal funds (*id.* at ¶¶ 13-14, 52, 59-62); and

3. From April 9, 2018, through April 30, 2018, he took approved leave for self care under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") (*id.* at ¶¶ 36-41, 52, 63).

Mr. McKenzie alleges that these activities constitute protected activities under the following federal statutes, respectively: (1) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"); (2) the National Defense Authorization Act, 42 U.S.C. § 4712 ("NDAA"); and (3) the FMLA.

Mr. McKenzie further alleges that TTU unlawfully retaliated against him for engaging in the protected activities. (*Id.* at ¶¶ 33, 52.) The retaliation that Mr. McKenzie claims to have experienced in response to his filing of a sex/gender discrimination complaint is twofold: (1) Dr. Crickenberger, while serving as his supervisor, allegedly took job responsibilities away from Mr. McKenzie, excluded him from meetings, and otherwise ostracized him; and (2) on May 31, 2018, Drs. Johnson and Crickenberger allegedly called Mr. McKenzie into a meeting at which his TTU employment was terminated. (*Id.* at ¶¶ 33, 52, 57-58.) As for his reports regarding alleged mismanagement of financial aid funds and taking approved FMLA leave, Mr. McKenzie alleges that TTU discharged him as retaliation for those acts as well. (*Id.* at ¶¶ 52, 59-63.)

On May 30, 2019, Mr. McKenzie filed this lawsuit. Based on his allegations of unlawful retaliation, Mr. McKenzie asserts various claims against TTU and Drs. Crickenberger and Johnson in their official capacities, including claims for damages and various other forms of relief under

2

the following federal statutes: Title IX; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the NDAA; and the FMLA. (*See* Complaint (Doc. 1) at ¶¶ 5, 7, 57-60, 63.)

Mr. McKenzie also seeks to recover damages and various other forms of relief under the following sections of the Tennessee Code: the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"); Tenn. Code Ann. § 8-50-116; and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA"). (*See* Complaint (Doc. 1) at ¶¶ 5, 57-62.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. Courts must construe the allegations of a complaint in the light most favorable to the plaintiff when ruling on a 12(b)(1) motion to dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir.1997). The plaintiff has the burden of proving that the court has subject matter jurisdiction. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). If it is determined that the court lacks subject matter jurisdiction, "the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject matter jurisdiction is a proper vehicle to assert Eleventh Amendment immunity. *See Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 627 (6th Cir. 2001) (trial court properly dismissed a claim for lack of subject matter jurisdiction based on the defendant's Eleventh Amendment immunity); *Henderson v. Sw. Tennessee Cmty. Coll.*, 282 F. Supp. 2d 804, 806 (W.D. Tenn. 2003); *Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 (E.D. Mich. 2015); *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012).

Rule 12(b)(6) permits a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When addressing a Rule 12(b)(6) motion, the Court is obligated to construe the complaint in the light most favorable to the nonmoving party and accept all well-pleaded factual allegations as true to determine whether the moving party is entitled to judgment as a matter of law. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cnty.*, 814 F.2d 277, 279 (6th Cir. 1987)). To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some viable legal theory*." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original) (citations and internal quotation marks omitted); *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).

**LEGAL ARGUMENT**

**1. Mr. McKenzie's Title IX Retaliation Claim (Count I) Fails as a Matter of Law.**

Mr. McKenzie grounds his Title IX retaliation claim on two separate instances of alleged retaliatory conduct. *First*, Mr. McKenzie alleges that Dr. Crickenberger retaliated against Mr. McKenzie for submitting his January 2, 2018, sex/gender discrimination complaint to TTU's Title IX Office by taking various adverse actions against him while serving as his interim supervisor through April 2, 2018. *See* Complaint (Doc. 1) at ¶¶ 3, 25-35, 40, 57. *Second*, Mr. McKenzie

4

alleges that at a May 31, 2018, meeting, Dr. Johnson, his new supervisor as of April 2, 2018, and Dr. Crickenberger terminated Mr. McKenzie's employment to retaliate against him for submitting his sex/gender discrimination complaint. *See id.* at ¶¶ 47-52, 57.

Because these allegations, addressed in order below, fail to set forth an actionable Title IX retaliation claim, the Court should dismiss the Count I Title IX claim with prejudice.

### A. The Title IX retaliation claim is time-barred to the extent it is grounded on Dr. Crickenberger's alleged retaliatory acts while serving as Mr. McKenzie's supervisor.

Having filed this lawsuit on May 30, 2019, Mr. McKenzie is barred from seeking to recover damages for alleged retaliation occurring before May 30, 2018, under the one-year statute of limitations for Title IX retaliation claims. *See Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 733 (M.D. Tenn. 2018) (explaining that "Title IX does not contain its own statute of limitations, but the Court of Appeals has held that the applicable limitations period is, similarly, the same as applies to state personal injury claims, which is one year in Tennessee") (citing *Lillard v. Shelby County Board of Ed.*, 76 F.3d 716, 729 (6th Cir. 1996) and *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 808 (M.D. Tenn. 2016)).

Mr. McKenzie, however, grounds his Title IX claim in part on alleged retaliatory acts that pre-date May 30, 2018. Specifically, Mr. McKenzie alleges that Dr. Crickenberger, his interim supervisor until April 2, 2018, retaliated against him for filing his January 2, 2018, sex/gender discrimination complaint by taking "away and refus[ing] to provide various job responsibilities that were [Mr. McKenzie's] or that he had been promised." Complaint (Doc. 1) at ¶¶ 3, 29, 33, 40. Further, she allegedly became distant, "cancelled or excluded him from meetings that they had scheduled[,]" and "[d]uring meetings that they did have, she chastised him for making the discrimination complaint [and] stared at Mr. McKenzie in an intimidating manner." *Id.*

5

As these alleged retaliatory acts necessarily occurred between January 2, 2018, when Mr. McKenzie filed his complaint, and April 2, 2018, when Dr. Crickenberger ceased being Mr. McKenzie's supervisor, they all happened before May 30, 2018, and thus fall outside of the one-year statute of limitations for Title IX claims. The Court therefore should dismiss with prejudice Mr. McKenzie's Title IX retaliation claim grounded on Dr. Crickenberger's alleged retaliatory conduct while serving as Mr. McKenzie's supervisor. *E.g.*, *Haley*, 353 F. Supp. 3d at 733 (dismissing Title IX claim as time-barred under applicable one-year statute of limitations).

### B. The Title IX retaliation claim grounded on Mr. McKenzie's termination fails because his Title IX protected activity was not the but-for cause of the alleged retaliation.

To state a Title IX retaliation claim, a plaintiff must plead

> (1) that she engaged in conduct protected under Title IX, (2) that [the defendant] knew of the protected activity, (3) that she was subjected to an adverse action at the time, or after, the protected conduct took place, and (4) [the defendant's] decision to take the alleged adverse action would not have happened ***but for*** the report of sexual harassment.

*M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB, 2017 U.S. Dist. LEXIS 11504, \*23 (W.D. Ky. Jan. 27, 2017) (emphasis supplied) (quoting *Doe v. Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d 831, 842 (M.D. Tenn. 2015) (Trauger, J.)); *see also Baldwin v. New York State*, 690 Fed. Appx. 694, 697 (2d Cir. 2017) (explaining that for Title IX retaliation claims, the "desire to retaliate must be a 'but-for cause of the challenged employment action'"); *Burton v. Bd. of Regents*, 851 F.3d 690, 695 (7th Cir. 2017) (holding that Title IX retaliation claim requires proof of a but-for causal connection between the statutorily protected activity and the materially adverse action); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 759 (M.D. Tenn. 2019) (Crenshaw, J.) ("Assuming without deciding that *Nassar*'s but-for standard applies" to Title IX retaliation claims) (citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

With regards to the fourth element of the claim, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013). In other words, to establish but-for causation, there needs to be a showing that the defendant "would not have retaliated against [the] plaintiff if she had not complained of the activity, but everything else had been the same." *Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d at 842.

Here, Mr. McKenzie alleges that he engaged in conduct protected by Title IX when he filed a sex/gender discrimination complaint against Dr. Crickenberger with TTU's Title IX Office, and that TTU discharged his employment as retaliation for him doing so. *See* Complaint (Doc. 1) at ¶¶ 52, 57-58. However, he also alleges that "Defendants discharged Mr. McKenzie because he" engaged in other activities protected not by Title IX, but by other federal statutes. *Id.* at ¶¶ 52, 59-60, 63. Specifically, Mr. McKenzie claims that TTU terminated his employment because he engaged in NDAA-protected activity (complaining about alleged mismanagement of federal funds) *and* FMLA-protected activity (taking FMLA leave in April 2018). *See id*. Mr. McKenzie does not plead the various alleged causes of his termination in the alternative – *i.e.*, he does not claim that his employment was terminated because of his sex/gender discrimination complaint *or*, in the alternative, because of his reporting of Title IV funds mismanagement *or*, in the alternative, because of his FMLA leave. Rather, by his own account of the facts, each of his alleged activities is protected by a distinct federal statute, and each caused TTU's retaliatory discharge of his employment. *See id.* at ¶¶ 52, 57-60, 63.

Accordingly, because Mr. McKenzie's pleading effectively alleges that his employment would have been terminated even if he had not engaged in the Title IX protected activity of filing

7

a sex/gender discrimination complaint, Mr. McKenzie cannot claim that his Title IX protected activity is the but-for cause of his termination. *See generally Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d at 842 (explaining in footnote that the court ruled the but-for causation standard would apply to Title IX retaliation claim). The Court therefore should dismiss his Title IX retaliation claim for failure to state a claim.

**2. Mr. McKenzie's Title VII Retaliation Claim (Count I) Fails because He Has Not Exhausted Administrative Remedies.**

The exhaustion of administrative remedies is a condition precedent to filing a lawsuit alleging Title VII discrimination. *See Williams v. Northwest Airlines, Inc.*, 53 Fed. Appx. 350, 351 (6th Cir. 2002). A plaintiff may only file a civil action regarding such claim after filing timely charges with the EEOC and "'receiving and acting upon the EEOC's statutory notices of the right to sue.'" *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)); *see also* 42 U.S.C. § 2000e-5(f)(1) (stating that a suit may be filed by the aggrieved person "within ninety days after the giving of such notice [that] a civil action may be brought"). "[P]remature [Title VII] suits are subject to a motion to dismiss at any time before notice of the right to sue is received." *Portis v. Ohio*, 141 F.3d 632, 634 (6th Cir. 1998) (quoting *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1218 (5th Cir. 1982)).

By his Complaint, Mr. McKenzie admits that he has not yet received a right to sue notice from the EEOC. *See* Complaint (Doc. 1) at ¶ 7. The Court therefore should dismiss Mr. McKenzie's claim for retaliation under Title VII.[2] *E.g.*, *Love v. Mich. Dep't of Corr.*, Case No.

---

[2] Should Mr. McKenzie seek to assert a Title VII claim after conclusion of the EEOC process, doing so would be futile. Mr. McKenzie pleads that he filed a Charge of Discrimination directly with the EEOC on February 4, 2019. *See* Complaint (Doc. 1) at ¶ 7. That filing was 249 days after the May 31, 2018, termination of his employment. If a plaintiff "files his charge directly with the EEOC, he must do so within 180 days of the alleged discrimination; if he

8

12-10374, 2013 U.S. Dist. LEXIS 59172, *9 (E.D. Mich. April 25, 2013) ("As of the date of this order, Plaintiffs have not submitted the condition precedent, right-to-sue-letter associated with their Title VII claim of Retaliation. Therefore, Plaintiffs' Retaliation claim is dismissed.") (citing *Dixon v. Ohio Dept. of Rehab. And Correction*, Case No. 97-4475, 1999 U.S. App. LEXIS 8384 at *3 (6th Cir. Apr. 28, 1999) for the proposition that obtaining a right to sue letter is a condition precedent, and that failure to obtain a right-to-sue letter mandates dismissal under Title VII).

### 3. The Court Lacks Subject Matter Jurisdiction Over Claims Under the THRA (Count I), NDAA (Count II), TPPA (Count II), and Tenn. Code Ann. § 8-50-116 (Count III).

By Counts I, II, and III, Mr. McKenzie asserts that TTU is liable for alleged violations of three Tennessee statutes – namely, the THRA, TPPA, and Tenn. Code Ann. § 8-50-116 – and one federal statute – the NDAA. *See* Complaint (Doc. 1) at ¶¶ 57-62. Because TTU, an agency of the State of Tennessee, has Eleventh Amendment immunity from suit under these statutes, the Court does not have subject matter jurisdiction over the claims.

The Eleventh Amendment to the United States Constitution states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The United States Supreme Court has held that the Eleventh Amendment bars suits by private individuals like Mr. McKenzie against nonconsenting states in federal court, unless Congress has validly abrogated the state's immunity, or the state has waived its immunity. *See generally Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Eleventh Amendment immunity applies to the State, its agencies, and employees in

---

chooses instead to file the charge with an equivalent state agency, he has 300 days from the alleged discrimination." *Booth v. Nissan North America, Inc.*, No. 18-5985, 2019 U.S. App. LEXIS 17159, at *10 (6th Cir. June 7, 2019) (citing 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5; *Block v. Meharry Med. Coll.*, 723 F. App'x 273, 277 (6th Cir. 2018)). Because Mr. McKenzie failed to timely file his EEOC charge within 180 days of his termination, he is barred from pursuing his Title VII claim in court.

9

their official capacities. *Cf. Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). TTU is an agency of the State of Tennessee to which the State's Eleventh Amendment immunity applies. *See* Complaint (Doc. 1) at ¶ 2 (alleging that "TTU is a state-operated educational institution with its principal place of business in Cookeville, Tennessee"); *see*, *e.g.*, *Watkins v. Univ. of Memphis Campus Police Servs.*, No. 15-2006-JDT-dkv, 2015 U.S. Dist. LEXIS 22484 at *9-11 (W.D. Tenn. Feb. 2, 2015) (holding that "the University of Memphis is a state institution to which the doctrine of sovereign immunity applies."), *adopted by Watkins v. Univ. of Memphis Campus Police Servs.*, No. 15-2006-JDT-dkv, 2015 U.S. Dist. LEXIS 22312 (W.D. Tenn. Feb. 25, 2015); *Hiefner v. University of Tennessee*, 914 F. Supp. 1513, 1515 (E.D. Tenn. 1995) (holding that members of Tennessee's university system are "arms" or "alter-egos" of the State and thus entitled to the State's Eleventh Amendment immunity).

Here, because Congress cannot abrogate the State's Eleventh Amendment immunity with regards to Mr. McKenzie's claims under Tennessee laws, and because there is no statute by which the State has waived its Eleventh Amendment immunity to the claims, Mr. McKenzie's claims under the THRA, TPPA, and Tenn. Code Ann. § 8-50-116 are barred by the Eleventh Amendment and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Jones v. Southwest Tenn. Cmty. College*, No. 07-2707-STA, 2008 U.S. Dist. LEXIS 93491 at *13-*14 (W.D. Tenn. Nov. 18, 2008) (explaining that the "Eleventh Amendment provides a jurisdictional bar to suits by private individuals of non-consenting states in federal court on state law claims" and dismissing THRA claims against Tennessee state community college as barred by Eleventh Amendment immunity); *Dismukes v. Comm'r, Tenn. Dept. of Children's Servs.*, No. 3:04-0170, 2006 U.S. Dist. LEXIS 29861 at *22-*27 (M.D. Tenn. Apr. 25, 2006) (dismissing THRA and TPPA claims as barred by the State's Eleventh Amendment immunity); *cf.*, *Burnside*

10

*v. Univ. of Memphis*, No. 15-cv-2193-JDT-tmp, 2015 U.S. Dist. LEXIS 130414 at *9 (W.D. Tenn. Aug. 12, 2015) ("Congress has not abrogated Tennessee's immunity to allow tort claims to be filed against the State in federal court. Nor has Tennessee consented to suit in federal court for tort claims brought under state law.").

Further, Congress never abrogated the State's Eleventh Amendment immunity with regards to Mr. McKenzie's claims under the NDAA; nor has the State ever waived its immunity from suit under that statute. *See* 41 U.S.C. § 4712; *Slack v. Wash. Metro. Area Transit Auth.*, 353 F. Supp. 3d 1, 12 (D.D.C. 2019) (holding that because "Congress did not abrogate [state agency's] sovereign immunity and because [state agency] did not waive its immunity under the NDAA, this Court lacks jurisdiction over [plaintiff's] NDAA claim"). Accordingly, the Court lacks jurisdiction over the NDAA claim and should dismiss it.

**4. The FMLA Retaliation Claim (Count IV) Fails Because Mr. McKenzie's FMLA Leave Was Not the But-For Cause of the Alleged Retaliation.**

To state a claim for retaliation under the FMLA, Mr. McKenzie must allege that: (1) he engaged in FMLA-protected activity; (2) TTU knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *See Sharp v. Profitt*, 674 Fed. Appx. 440, 450-51 (6th Cir. 2016) (quoting *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012)). The causation standard for FMLA retaliation claims is the same as that for Title IX retaliation claims discussed above – *i.e.*, FMLA retaliation claims must be proved "under the 'but-for' causation standard," which "'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Harris v. City of Lewisburg*, No. 1:15-cv-00114, 2017 U.S. Dist. LEXIS 119746 at *16 (M.D. Tenn. July 31, 2017) (quoting *Sharp*, 674 Fed. Appx. at 451, for the proposition that "it seems that FMLA

11

retaliation requires a showing of but-for causation")) (citing and quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014)).

Because FMLA retaliation claims require proof of but-for causation, Mr. McKenzie's FMLA claim fails for reasons the same as those in Section 1.B, *supra*, relating to his Title IX retaliation claim. Specifically, while Mr. McKenzie alleges that TTU terminated his employment to retaliate against him for exercising his FMLA rights, he also alleges that TTU terminated his employment because he engaged in conduct protected by two other federal statutes, namely, Title IX and the NDAA. *See* Complaint (Doc. 1) at ¶¶ 52, 57-63. That being the case, if he had not engaged in FMLA-protected activity but all else remained the same, according to Mr. McKenzie, TTU still would have terminated his employment due to his filing of a sex/gender discrimination complaint protected by Title IX and internal reporting of financial aid mismanagement, allegedly protected by the NDAA. *See* Complaint (Doc. 1) at ¶¶ 52, 57-60, 63. Accordingly, Mr. McKenzie cannot claim that his FMLA leave was the but-for cause of his discharge from TTU employment, and thus fails to state a FMLA retaliation claim upon which relief can be granted. *Cf. Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d at 842 (explaining that to establish but-for causation, there needs to be a showing that the defendant "would not have retaliated against [the] plaintiff if she had not complained of the activity, but everything else had been the same").

**5. The Court Should Dismiss the Official-Capacity Claims Against Drs. Crickenberger and Johnson (Count IV) Because Mr. McKenzie Fails to Plead that They Are in a Position to Provide the Prospective Injunctive Relief He Seeks Under *Ex Parte Young*.**

Mr. McKenzie has sued Drs. Crickenberger and Johnson in their official capacities and, pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), seeks to hold them liable for the prospective injunctive relief of reinstating him to his former TTU position. *See* Complaint (Doc. 1) at ¶¶ 53, 63. In the employment context, "claims for reinstatement are actionable when made against a state

official with the power to reinstate the plaintiff." *Finch v. N.Y. State Office of Children and Family Servs.*, No. 10 CV 9691 (VB), 2012 U.S. Dist. LEXIS 99453, at *11 (S.D.N.Y. May 30, 2012) (citing *State Emps. Bargain Agent Coal v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007), and dismissing claim for prospective injunctive relief because "it is not clear in the complaint that plaintiff has named as a defendant an individual who has the authority to reinstate her to her previous position").

By his Complaint, Mr. McKenzie has not alleged that Drs. Crickenberger and Johnson have the power or authority to reinstate his employment at TTU. *See generally* Complaint (Doc. 1). Accordingly, Mr. McKenzie has failed to state a valid claim for reinstatement against Drs. Crickenberger and Johnson, and the official-capacity claims against them should be dismissed.

**6. The Court Should Dismiss Mr. McKenzie's Requests for Punitive, Liquidated, and Treble Damages, as He Has No Valid Claim to Recover Such Relief.**

In addition to compensatory damages and prospective injunctive relief, Mr. McKenzie requests punitive, liquidated, and treble damages. *See* Complaint (Doc. 1) at ¶ 54, RELIEF REQUESTED ¶¶ 6, 7. Mr. McKenzie, however, has not asserted any valid claims against Defendants by which he can recover punitive, liquidated, or treble damages. *E.g.*, *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) (holding that "the Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX"); *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1997) ("Congress amended Title VII in 1991 to permit punitive damages in Title VII actions. The amendment however specifically exempted governments, government agencies and political subdivisions."); *Smith v. Grady*, 960 F. Supp. 2d 735, (S.D. Ohio 2013) ("A number of courts previously have held that a plaintiff cannot recover punitive or emotional distress damages under the FMLA because neither are expressly provided for in Section 2617(a)."). Accordingly, the Court should dismiss his claims for those forms of relief.

13

## CONCLUSION

For the foregoing reasons, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss Mr. McKenzie's Complaint.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

*s/ Matthew D. Janssen*
Matthew D. Janssen, BPR No. 035451
Assistant Attorney General
Education and Employment Division
UBS Tower, 18th Floor
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-7087
Facsimile: (615) 741-7327
Matthew.Janssen@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Douglas B. Janney III, Esq.
Law Office of Douglas B. Janney III
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215

Parties may access this filing through the Court's electronic filing system.

*s/ Matthew D. Janssen*
Matthew D. Janssen, BPR No. 035451