**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **LESTER C. McKENZIE, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:19-cv-00044** |
| | ) | |
| **TENNESSEE TECHNOLOGICAL** | ) | |
| **UNIVERSITY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**BRIEF IN SUPPORT OF**
**MOTION FOR PARTIAL DISMISSAL OF**
**SECOND AMENDED COMPLAINT**

---

Tennessee Technological University, Leslie Crickenberger, in her official capacity, Brandon Johnson, in his official capacity, and Philip Oldham, in his official capacity, by and through State of Tennessee, Office of Attorney General and Reporter, respectfully move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts I, II, and IV of Mr. McKenzie's Second Amended Complaint.

## FACTS AS ALLEGED AND PROCEDURAL HISTORY[1]

Tennessee Technological University ("TTU") is a state-operated educational institution located in Cookeville, Tennessee. (Second Amended Complaint (hereinafter "SAC," Docket No. 25) at ¶ 2.) From August 1, 2005, until the termination of his employment on May 31, 2018, Lester C. McKenzie III worked for TTU as Director of Financial Aid. (*Id.* at ¶ 8.) Mr. McKenzie reported

---

[1] Defendants do not concede or waive their ability to later challenge the truth of any fact asserted in the Second Amedned Complaint, but, for purposes of this Motion only, present the facts as stated by the pleading.

to Dr. Leslie Crickenberger on an interim basis until April 2, 2018, and from that date till May 31,

2018, Dr. Brandon Johnson served as Mr. McKenzie's supervisor. (*Id.* at ¶¶ 3, 4, 40.).

Mr. McKenzie did the following while employed by TTU:

1. On January 2, 2018, he filed a sex/gender discrimination complaint against Dr. Crickenberger with TTU's Title IX Office and subsequently participated in TTU's investigation into the complaint (*id.* at ¶¶ 29, 52, 57);

2. In late 2017 and early and mid-2018, he reported within TTU alleged mismanagement of Title IV federal financial aid funds and alleged violations of laws, rules, and regulations related to federal funds (*id.* at ¶¶ 13-14, 52, 61); and

3. From April 9, 2018, through April 30, 2018, he took approved leave for self care under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") (*id.* at ¶¶ 36-41, 52, 62).

Mr. McKenzie alleges that these activities constitute protected activities under the following

federal statutes: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et*

*seq*. ("Title VII"); (2) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

("Title IX"); (3) the National Defense Authorization Act, 42 U.S.C. § 4712 ("NDAA"); and (4)

the FMLA.

Mr. McKenzie further alleges that TTU unlawfully retaliated against him for engaging in

the protected activities. (*Id.* at ¶¶ 33, 52.) The retaliation that Mr. McKenzie claims to have

experienced in response to his filing of a sex/gender discrimination complaint is twofold: (1) Dr.

Crickenberger, while serving as his supervisor, allegedly took job responsibilities away from Mr.

McKenzie, excluded him from meetings, and otherwise ostracized him; and (2) on May 31, 2018,

Drs. Johnson and Crickenberger allegedly called Mr. McKenzie into a meeting at which his TTU

employment was terminated. (*Id.* at ¶¶ 33, 52, 57-60.) As for his reports regarding alleged

mismanagement of financial aid funds and taking approved FMLA leave, Mr. McKenzie alleges

that TTU discharged him as retaliation for those acts as well. (*Id.* at ¶¶ 52, 61-62.)

2

On February 4, 2019 (249 days after the termination of his employment), Mr. McKenzie filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 7.) On May 30, 2019, Mr. McKenzie commenced this lawsuit, and on August 26, 2019, he filed a Second Amended Complaint. Based on his allegations of unlawful retaliation, Mr. McKenzie asserts various claims against TTU and Drs. Crickenberger, Johnson, and Oldham in their official capacities, including claims for damages and various other forms of relief under the following federal statutes: Title VII; Title IX; the NDAA; and the FMLA. (*Id.* at ¶¶ 6, 7, 57-62.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When addressing a Rule 12(b)(6) motion, the Court is obligated to construe the complaint in the light most favorable to the nonmoving party and accept all well-pleaded factual allegations as true to determine whether the moving party is entitled to judgment as a matter of law. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cnty.*, 814 F.2d 277, 279 (6th Cir. 1987)). To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some viable legal theory*." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d

3

434, 436 (6th Cir. 1988) (emphasis in original) (citations and internal quotation marks omitted); *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).

## LEGAL ARGUMENT

### 1. Mr. McKenzie's Title VII Retaliation Claim (Count I) is Untimely.

A plaintiff may pursue a civil action alleging Title VII discrimination only if the plaintiff first files a timely charge describing the alleged discrimination. *See generally Booth v. Nissan North America, Inc.*, 927 F.3d 387, 392 (6th Cir. 2019); *El-Zabet v. Nissan North America, Inc.*, 211 Fed. Appx. 460, 463 (6th Cir. 2006) (quoting 42 U.S.C. § 2000e-5(e)(1)). The charge must be filed either with the EEOC or with an equivalent state agency, which in Tennessee is the Tennessee Human Rights Commission ("THRC"). *See* 42 U.S.C. § 2000e-5(e)(1). Alternatively, the charge can be dual-filed with the EEOC and equivalent state agency contemporaneously. *See generally EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 799 (E.D. Tenn. 2016).

In Tennessee, if the plaintiff initially files a charge with the THRC or makes a concurrent dual-filing with the EEOC and THRC, the charge is timely if made within 300 days of the alleged unlawful employment action. *See id.* If, however, the plaintiff files a charge exclusively with the EEOC, a 180-day statute of limitations applies, and any alleged unlawful conduct occurring more than 180 days before the filing date is time-barred and not actionable under Title VII. *See generally Clemons v. Metro. Gov't of Nashville & Davidson Cnty*, 664 Fed. Appx. 544, 546-47 (6th Cir. 2016) (affirming district court's finding that 180-day limitations period applied to EEOC charge because plaintiff "made no showing that he initiated proceedings with a state or local agency by any mechanism" and that Title VII race-discrimination claim was time-barred); *Dolgencorp*, 196 F. Supp. 3d at 799 ("If a charge is not first filed with the THRC, or dual-filed with the EEOC and the THRC contemporaneously, however, then the 180-day limit applies.") (citing *El-Zabet*, *supra*,

which "appl[ied] the 180-day time limit in Tennessee where the plaintiff filed an EEOC charge but 'nothing in the record indicat[ed] that [the plaintiff] instituted proceedings with a state or local agency'").

Mr. McKenzie pleads that he "filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ('EEOC') on February 4, 2019." SAC at ¶ 7. Because Mr. McKenzie filed his charge only with the EEOC, as opposed to with the THRC or with the EEOC and THRC pursuant to a dual-filing, the 180-day limitations period applies. *E.g.*, *Clemons*, 664 Fed. Appx. at 546. Accordingly, because each instance of alleged retaliation pled in the Second Amended Complaint occurred more than 180 days before his February 4, 2019, EEOC filing – *i.e.*, prior to August 8, 2018 – Mr. McKenzie's Title VII retaliation claim is time-barred. *E.g.*, *El-Zabet*, 211 Fed. Appx. at 463 (holding that the "180-day time limit applie[d]," and since the plaintiff "filed his EEOC charge on July 23, 2003 [o]nly events occurring after January 24, 2003, fall within the Title VII limitations period").

## 2. Mr. McKenzie's Title IX Retaliation Claim (Count II) Fails as a Matter of Law.

Mr. McKenzie grounds his Title IX retaliation claim on two separate instances of alleged retaliatory conduct. *First*, Mr. McKenzie alleges that Dr. Crickenberger retaliated against Mr. McKenzie for submitting his January 2, 2018, sex/gender discrimination complaint to TTU's Title IX Office by taking various adverse actions against him while serving as his interim supervisor through April 2, 2018. *See* SAC at ¶¶ 3, 25-35, 40, 59. *Second*, Mr. McKenzie alleges that at a May 31, 2018, meeting, Dr. Johnson, his new supervisor as of April 2, 2018, and Dr. Crickenberger terminated Mr. McKenzie's employment to retaliate against him for submitting his sex/gender discrimination complaint. *See id.* at ¶¶ 47-52, 59.

5

Because these allegations, addressed in order below, fail to set forth an actionable Title IX retaliation claim, the Court should dismiss the Count II Title IX claim with prejudice.

**A. The Title IX retaliation claim is time-barred to the extent it is grounded on Dr. Crickenberger's alleged retaliatory acts while serving as Mr. McKenzie's supervisor.**

Having filed this lawsuit on May 30, 2019, Mr. McKenzie is barred from seeking to recover damages for alleged retaliation occurring before May 30, 2018, under the one-year statute of limitations for Title IX retaliation claims. *See Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 733 (M.D. Tenn. 2018) (explaining that "Title IX does not contain its own statute of limitations, but the Court of Appeals has held that the applicable limitations period is, similarly, the same as applies to state personal injury claims, which is one year in Tennessee") (citing *Lillard v. Shelby County Board of Ed.*, 76 F.3d 716, 729 (6th Cir. 1996) and *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 808 (M.D. Tenn. 2016)).

Mr. McKenzie, however, grounds his Title IX claim in part on alleged retaliatory acts that pre-date May 30, 2018. Specifically, Mr. McKenzie alleges that Dr. Crickenberger, his interim supervisor until April 2, 2018, retaliated against him for filing his January 2, 2018, sex/gender discrimination complaint by taking "away and refus[ing] to provide various job responsibilities that were [Mr. McKenzie's] or that he had been promised." SAC at ¶¶ 3, 29, 33, 40. Further, she allegedly became distant, "cancelled or excluded him from meetings that they had scheduled[,]" and "[d]uring meetings that they did have, she chastised him for making the discrimination complaint [and] stared at Mr. McKenzie in an intimidating manner." *Id.* at ¶ 33.

As these alleged retaliatory acts necessarily occurred between January 2, 2018, when Mr. McKenzie filed his complaint, and April 2, 2018, when Dr. Crickenberger ceased being Mr. McKenzie's supervisor, they all happened before May 30, 2018, and thus fall outside of the one-

year statute of limitations for Title IX claims. The Court therefore should dismiss with prejudice Mr. McKenzie's Title IX retaliation claim grounded on Dr. Crickenberger's alleged retaliatory conduct while serving as Mr. McKenzie's supervisor. *E.g.*, *Haley*, 353 F. Supp. 3d at 733 (dismissing Title IX claim as time-barred under applicable one-year statute of limitations).

### B. The Title IX retaliation claim grounded on Mr. McKenzie's termination fails because his Title IX protected activity was not the but-for cause of the alleged retaliation.

To state a Title IX retaliation claim, a plaintiff must plead

(1) that she engaged in conduct protected under Title IX, (2) that [the defendant] knew of the protected activity, (3) that she was subjected to an adverse action at the time, or after, the protected conduct took place, and (4) [the defendant's] decision to take the alleged adverse action would not have happened ***but for*** the report of sexual harassment.

*M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB, 2017 U.S. Dist. LEXIS 11504, *23 (W.D. Ky. Jan. 27, 2017) (emphasis supplied) (quoting *Doe v. Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d 831, 842 (M.D. Tenn. 2015) (Trauger, J.)); *see also Baldwin v. New York State*, 690 Fed. Appx. 694, 697 (2d Cir. 2017) (explaining that for Title IX retaliation claims, the "desire to retaliate must be a 'but-for cause of the challenged employment action'"); *Burton v. Bd. of Regents*, 851 F.3d 690, 695 (7th Cir. 2017) (holding that Title IX retaliation claim requires proof of a but-for causal connection between the statutorily protected activity and the materially adverse action); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 759 (M.D. Tenn. 2019) (Crenshaw, J.) ("Assuming without deciding that *Nassar*'s but-for standard applies" to Title IX retaliation claims) (citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

With regards to the fourth element of the claim, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013). In other words, to establish but-for causation, there needs to be a showing

7

that the defendant "would not have retaliated against [the] plaintiff if she had not complained of the activity, but everything else had been the same." *Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d at 842.

Here, Mr. McKenzie alleges that he engaged in conduct protected by Title IX when he filed a sex/gender discrimination complaint against Dr. Crickenberger with TTU's Title IX Office, and that TTU discharged his employment as retaliation for him doing so. *See* SAC at ¶¶ 52, 59-60. However, he also alleges that "Defendants discharged Mr. McKenzie because he" engaged in other activities protected not by Title IX, but by other federal statutes. *Id.* at ¶¶ 52, 57-58, 61-62. Specifically, Mr. McKenzie claims that TTU terminated his employment because he engaged in NDAA-protected activity (complaining about alleged mismanagement of federal funds) *and* FMLA-protected activity (taking FMLA leave in April 2018). *See id.* Mr. McKenzie does not plead the various alleged causes of his termination in the alternative – *i.e.*, he does not claim that his employment was terminated because of his sex/gender discrimination complaint *or*, in the alternative, because of his reporting of Title IV funds mismanagement *or*, in the alternative, because of his FMLA leave. Rather, by his own account of the facts, each of his alleged activities is protected by a distinct federal statute, and each caused TTU's retaliatory discharge of his employment. *See id.* at ¶¶ 52, 57-62.

Accordingly, because Mr. McKenzie's pleading effectively alleges that his employment would have been terminated even if he had not engaged in the Title IX protected activity of filing a sex/gender discrimination complaint, Mr. McKenzie cannot claim that his Title IX protected activity is the but-for cause of his termination. *See generally Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d at 842 (explaining in footnote that the court ruled the but-for causation standard would

apply to Title IX retaliation claim). The Court therefore should dismiss his Title IX retaliation

claim for failure to state a claim.

### 3. The FMLA Retaliation Claim (Count IV) Fails Because Mr. McKenzie's FMLA Leave Was Not the But-For Cause of the Alleged Retaliation.

To state a claim for retaliation under the FMLA, Mr. McKenzie must allege that: (1) he

engaged in FMLA-protected activity; (2) TTU knew that he was exercising his FMLA rights; (3)

he suffered an adverse employment action; and (4) a causal connection existed between the

protected FMLA activity and the adverse employment action. *See Sharp v. Profitt*, 674 Fed. Appx.

440, 450-51 (6th Cir. 2016) (quoting *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283

(6th Cir. 2012)). The causation standard for FMLA retaliation claims is the same as that for Title

IX retaliation claims discussed above – *i.e.*, FMLA retaliation claims must be proved "under the

'but-for' causation standard," which "'requires proof that the unlawful retaliation would not have

occurred in the absence of the alleged wrongful action or actions of the employer.'" *Harris v. City

of Lewisburg*, No. 1:15-cv-00114, 2017 U.S. Dist. LEXIS 119746 at *16 (M.D. Tenn. July 31,

2017) (quoting *Sharp*, 674 Fed. Appx. at 451, for the proposition that "it seems that FMLA

retaliation requires a showing of but-for causation")) (citing and quoting *Laster v. City of

Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014)).

Because FMLA retaliation claims require proof of but-for causation, Mr. McKenzie's

FMLA claim fails for reasons the same as those in Section 2.B, *supra*, relating to his Title IX

retaliation claim. Specifically, while Mr. McKenzie alleges that TTU terminated his employment

to retaliate against him for exercising his FMLA rights, he also alleges that TTU terminated his

employment because he engaged in separate conduct protected by other federal statutes, namely,

Title VII, Title IX, and the NDAA. *See* SAC at ¶¶ 52, 57-62. That being the case, if he had not

engaged in FMLA-protected activity but all else remained the same, according to Mr. McKenzie,

9

TTU still would have terminated his employment due to his filing of a sex/gender discrimination complaint protected by Titles VII and IX and internal reporting of financial aid mismanagement, allegedly protected the NDAA.  *See* SAC at ¶¶ 52, 57-62.  Accordingly, Mr. McKenzie cannot claim that his FMLA leave was the but-for cause of his discharge from TTU employment, and thus fails to state a FMLA retaliation claim upon which relief can be granted.  *Cf. Rutherford Cty. Bd. of Educ.*, 86 F. Supp. 3d at 842 (explaining that to establish but-for causation, there needs to be a showing that the defendant "would not have retaliated against [the] plaintiff if she had not complained of the activity, but everything else had been the same").

## CONCLUSION

For the foregoing reasons, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss Counts I, II, and IV of Mr. McKenzie's Second Amended Complaint.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

_s/ Matthew D. Janssen_
Matthew D. Janssen, BPR No. 035451
Senior Assistant Attorney General
Education and Employment Division
UBS Tower, 18th Floor
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-7087
Facsimile: (615) 741-7327
Matthew.Janssen@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Douglas B. Janney III, Esq.
Law Office of Douglas B. Janney III
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215

Parties may access this filing through the Court's electronic filing system.

_s/ Matthew D. Janssen_
Matthew D. Janssen, BPR No. 035451

11